BSS:Robinson.Info.3
2104R00033

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. CCB-14-0512 |
| | * | (Theft or Bribery Concerning Programs |
| | * | Receiving Federal Funds, 18 U.S.C. § 666; |
| | * | Money Laundering, 18 U.S.C. § 1956 |
| | * | (a)(1)(B)(i); Forfeiture, 18 U.S.C. |
| | * | § 981(a)(I)(C)) |
| v. | * | |
| | * | |
| BARRY STEPHEN ROBINSON | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INDICTMENT

### Count I
### (Theft or Bribery Concerning Programs Receiving Federal Funds)

The United States Attorney for the District of Maryland charges:

1. At all times relevant to this Criminal Information, the Baltimore City Department of Transportation was an agency of a local government that received federal grants, contracts, subsidies, loans, guarantees and other forms of federal assistance in excess of $10,000 during the one-year period beginning May 1, 2013 and ending April 30, 2014.

2. At all times relevant to this Criminal Information, defendant BARRY STEPHEN ROBINSON was employed by the Baltimore City Department of Transportation as the Chief of the Division of Transit and Marine Services. In this capacity, he oversaw the "Circulator" and "Water Taxi" programs.

3.      In his official capacity, BARRY STEPHEN ROBINSON entered into contractual relationships with advertisers, vendors and others (hereafter "contracting parties") on behalf of Baltimore City. As such, BARRY STEPHEN ROBINSON purchased and paid for goods and services on behalf of Baltimore City, and received and processed payments from contracting parties and businesses which owed money to Baltimore City.

4.      Among the contracting parties that did business with the Division of Transit and Marine Services was Business #1, which was owned by Person A. It was the customary practice of Business #1 to pay its debts to Baltimore City by Person A giving a check to BARRY STEPHEN ROBINSON, who would then forward the check to the Baltimore City Director of Finance.

5.      In the spring of 2013, Business #1 owed a $40,000 debt to Baltimore City in connection with advertising on the Circulator busses. Person A tendered a check in the amount of $40,000, drawn on the account of Business #1, payable to the Baltimore City Director of Finance, to BARRY STEPHEN ROBINSON, but BARRY STEPHEN ROBINSON returned the check to Person A, stating that if Person A gave him $20,000, he would cancel the debt of Business #1 and issue documentation saying that the City of Baltimore had received the entire $40,000 payment. Person A did not immediately accept BARRY STEPHEN ROBINSON's offer, and the debt remained unpaid. BARRY STEPHEN ROBINSON repeated the

offer in the fall of 2013, and Person A once again declined to pay him the $20,000 he sought.

6.  In January 2014, Person A met with BARRY STEPHEN ROBINSON again, and BARRY STEPHEN ROBINSON proposed that Person A make cash payments totaling $20,000 to him over the course of a month. In exchange for the cash payments from Person A, BARRY STEPHEN ROBINSON would extinguish $60,000 of Business #1's debt to Baltimore City.

7.  Between January 23, 2014 and March 11, 2014, Person A made four $5000 cash payments to BARRY STEPHEN ROBINSON.

8.  On March 11, 2014, BARRY STEPHEN ROBINSON gave Person A a letter on Baltimore City letterhead, signed by BARRY STEPHEN ROBINSON, stating that Business #1 had fulfilled its $60,000 obligation to the City of Baltimore.

9.  Between January 2014 and March 11, 2014, in the District of Maryland, the defendant,

BARRY STEPHEN ROBINSON,

did corruptly solicit, demand and accept a thing of value from Person A, to wit, $20,000 in cash, intending to be influenced in connection with the business of the Baltimore City Department of Transportation involving $5000 or more.

18 U.S.C. §666(a)(1)(B)

## Count II

### (Theft or Bribery Concerning Programs Receiving Federal Funds)

The United States Attorney for the District of Maryland further charges:

1. Paragraphs 1 through 4 of Count I are realleged here.

2. As part of his responsibilities as Chief of the Division of Transit and Marine Services, BARRY STEPHEN ROBINSON purchased thirteen bus shelters for the City of Baltimore. Baltimore City Purchase Order P51813, dated Novenber 17, 2011, shows that the shelters were purchased from a Canadian company for $249, 290.00.

3. In conversations between May 2013 and March 2014, BARRY STEPHEN ROBINSON mentioned to Person A that he had purchased a number of bus shelters on behalf of the City of Baltimore, and that the City didn't know about the shelters, so he planned to sell them off for his own benefit  According to BARRY STEPHEN ROBINSON, he hoped to be able to realize at least $70,000 for the City's bus shelters in order to "pad" his retirement.

4. On March 11, 2014, Person A told BARRY STEPHEN ROBINSON that Person A might be able to locate a buyer for the bus shelters who would be willing to meet BARRY STEPHEN ROBINSON's price of $70,000.

5. On or about April 9, 2014, Person A and BARRY STEPHEN ROBINSON met to finalize the sale of the bus shelters. Person A tendered to BARRY STEPHEN ROBINSON the sum he demanded, $70,000.

6.	Between November 2011 and April 9, 2014, in the District of Maryland, the defendant,

BARRY STEPHEN ROBINSON

did embezzle, steal, obtain by fraud and without authority convert to his own use thirteen bus shelters owned by and in the custody of to the City of Baltimore, valued at $249,290.00.

18 U.S.C. § 666(a)(1)(A)

## Count III

## (Money Laundering)

The United States Attorney further charges:

1. On or about January 24, 2014, in the District of Maryland, the defendant,

### BARRY STEPHEN ROBINSON

knowing that the property involved in a financial transaction represented the proceeds of specified unlawful activity, that is: theft or bribery concerning programs receiving federal funds, in violation of Title 18 U.S.C. § 666 as charged in Count I, and knowing that the transaction was designed in whole or in part to disguise the source of the said proceeds, conducted a financial transaction which in fact involved the proceeds of the specified unlawful activity; namely, he caused the sum of $4750 in cash to be deposited into Bank of America Account Number ********* 7029, an account in another person's name.

18 U.S.C. § 1956(a)(1)(B)(i)

## **FORFEITURE**

Upon conviction of the offenses alleged in Count I and III of this Criminal Information, defendant BARRY STEPHEN ROBINSON shall forfeit to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(D) and 28 U.S.C. §2461(c) all right, title and interest in any and all property, real of personal, which represents or is traceable to the gross receipts obtained from the offenses, including but not limited to:

### Money Judgment

> A sum of money, $20,000, more or less, which constitutes
> or is derived from proceeds traceable to the offenses
> charged in Count I.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

- Cannot be located upon the exercise of due diligence;

- Has been transferred, sold to or deposited with a third party;

- Has been placed beyond the jurisdiction of the court;

- Has been substantially diminished in value; or

- Has been commingled with other property which cannot be divided without difficulty,

It is the intention of the United States, pursuant to 21 U.S.C. §853(p), as incorporated by 28 U.S.C.§ 2461(c), to seek forfeiture of any other substitute property of the defendant, up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(c)
18 U.S.C. § 1956(c)(7)
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)

Rod J. Rosenstein
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED
Foreperson

10/29/14
Date